Judgment rendered January 13, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,758-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE:  D.L.D.
APPLYING FOR INTRAFAMILY ADOPTION

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 737-A

Honorable Sharon Marchman, Judge

* * * * *

| | |
|---|---|
| E.T.F. | Appellant, In Proper Person |
| AMY COATH JOHNSON | Counsel for Appellee, D.L.D. |
| SCOTTY W. LOWERY | Counsel for Appellees, G.T.F. and Z.T.F. |

* * * * *

Before PITMAN, GARRETT, and COX, JJ.

**GARRETT, J.**

ETF, the biological father of GTF and ZTF, appeals from a trial court judgment finding that the father's consent to an intrafamily adoption was not required and a judgment granting the adoption.[1] The father argues that his due process rights were violated because the trial court did not appoint counsel to represent him in proceedings which resulted in the termination of his parental rights. For the following reasons, we reverse and remand to the trial court for further proceedings.

## FACTS

ETF and VFD were married and had two children, GTF, born September 15, 2003, and ZTF, born March 14, 2005. GTF is nonverbal and autistic. The parents divorced in July 2009 and were granted joint custody of the children with VFD being named as the domiciliary parent. ETF was ordered to pay $397 per month in child support. VFD married DLD on January 22, 2011.

On March 9, 2020, DLD filed a petition for stepparent adoption. He claimed that ETF had gone more than six months at a time without contacting the children and was $56,000 in arrears in his child support payments. DLD asserted that the consent of ETF to the adoption was not required, pursuant to La. Ch. C. art. 1245(C)(2), because he had failed to visit, communicate, or attempt to communicate with the children without just cause for multiple periods in excess of six months. VFD executed an authentic act of consent to the adoption.

---

[1] Pursuant to URCA 5-1 and 5-2, the initials of the parties involved will be used to protect the minors' identities.

On April 3, 2020, an opposition to the adoption was filed into the suit record. The opposition was dated March 31, 2020. It is in the format of an email in the form of a letter sent from an iPhone to Brenda Hale, who is ETF's mother, and was signed by ETF. In the opposition, ETF claimed that the information in the adoption petition was inaccurate. He maintained that he had always been a part of his children's lives, particularly GTF, who is severely autistic. ETF asserted that GTF had spent days with him and had lived with him on several occasions. According to ETF, VFD wanted to place GTF in a facility in Alexandria, hours away from the family. ETF opposed the decision and claimed the adoption was VFD's way of getting GTF into the facility without ETF's approval. No request for an attorney was made in this short one-page document. After the opposition was filed, the trial court appointed an attorney to represent the children.

This matter was instituted in the early days of the COVID-19 pandemic of 2020. A hearing was scheduled on May 6, 2020. The petitioner and his attorney and the attorney for the children appeared in court via live video feed. ETF appeared in person for the hearing. The court stated that, according to DLD, ETF's consent to the adoption was not required because he had failed to contact the children for a period in excess of six months without just cause. The court noted that ETF opposed the petition. The court stated that "because of our Covid-19 orders" it was not in a position to actually take up a hearing on the matter that day.

The court recognized that ETF appeared without an attorney. ETF said he tried to call "Legal Aid," but "These numbers didn't work. It went to a number that was out of service and I can't afford an attorney." ETF stated that he was not sure what to do. The court instructed ETF to find the

number for "Legal Services of North Louisiana." The court said, "Now you did not allege in your opposition that you filed that you were unable to afford to hire an attorney. So your recourse is to go to a legal aid [service]. Do you understand that?" ETF said that he understood.

The court rescheduled the hearing for June 10, 2020, and stated that the issue before the court would be whether ETF's consent was required for the adoption. The court said that DLD would have the burden of proving that ETF had not had contact with the children for six months or more. The court discussed at length that, if DLD proved that ETF had not had contact with the children for six months, his consent to the adoption would not be required.

The attorney for DLD stated that "Just in the spirit of full disclosure, I want to make clear that there were two grounds for . . . not needing his consent for the adoption and the other is that he has failed to pay child support for a period of greater than six months as well." The court examined the petition and noted the allegation that ETF was $56,000 in arrears in child support. According to the court, this was not sufficient to properly raise the failure to pay child support for six months as a ground for dispensing with ETF's consent to the adoption. At the close of the hearing, the trial court again urged ETF to contact Legal Services and said it would try to provide a phone number for him.

On May 8, 2020, DLD filed an amended petition. He alleged that the consent of the biological father to the intrafamily adoption may be dispensed with under both La. Ch. C. art. 1245(B)(1) and (B)(2) because ETF had refused or failed to comply with a court order of support without just cause for a period of at least six months and because he had refused or failed to

visit, communicate or attempt to communicate with the children without just cause for multiple periods in excess of six months each.[2] The notice for the amended petition was not issued by the clerk of court until June 2, 2020, and was not served on ETF until June 3, 2020. The notice contained the hearing date of June 10, 2020.

At the hearing on June 10, 2020, the parties appeared in court in person. No further mention was made of ETF's lack of an attorney other than the court's observation that he was representing himself. The court explained to ETF the applicable burden of proof and the order of the trial. ETF's interactions with the court demonstrated that he did not fully understand the proceedings.

According to the trial court, the narrow issue before it was whether ETF's consent to the adoption was necessary. The court noted that consent would not be required if there was proof that, during any six-month period of time, the father failed to pay his court-ordered child support or that he failed to visit the children or call and inquire about them for a period of six months without just cause. The trial court heard testimony from VFD, DLD, and ETF. The court found that ETF admitted that he had not made any payments of child support since 2010, a period in excess of six months. The trial court found that fact alone made ETF's consent to the adoption unnecessary. The trial court also found that more than six months passed when ETF did not see either child. The trial court failed to make the required determination as to whether the failure to pay child support or visit,

_____

[2] In the amended petition, DLD erroneously cites La. Ch. C. arts. 1245(B)(1) and (B)(2), rather than (C)(1) and (C)(2).

call, or inquire about the children for more than six months was without just cause.

The court noted that another hearing would be necessary to determine whether the adoption should be granted. ETF was instructed that he would not be allowed to participate in that hearing because his consent to the adoption was not necessary. He asked how he could get visitation with his son and was told that he should contact an attorney. He was told that, if the adoption was granted, his parental rights would be terminated and he would not have visitation rights. He was again instructed to consult with an attorney. A judgment dispensing with the consent of the biological father, pursuant to La. Ch. C. art. 1245, was signed by the trial court on June 24, 2020.

On June 12, 2020, ETF filed a motion to proceed *in forma pauperis*, stating that he is disabled. The motion was granted by the trial court. He also filed a complaint against the trial judge, VFD and DLD, in the Fourth Judicial District Court on a federal court form alleging that the trial court violated his civil rights by failing to assign him an attorney when he asked for one, to assign written reasons for the judgment, and to allow him to appeal the decision. On June 24, 2020, the trial court made a written notation on the filing which stated:

> Relief requested is denied as mover filed in the wrong court
> using Federal District Court forms. Furthermore, mover failed
> to request an attorney during these proceedings.

On June 17, 2020, ETF filed a handwritten request to appeal the trial court judgment rendered in open court on June 10, 2020. He claimed that his constitutional rights had been violated. On July 1, 2020, after the

intrafamily adoption was granted, the trial court made the following notation on ETF's filing, "See separate order granting return date for appeal."

On June 22, 2020, ETF filed an *ex parte* motion to stay the proceedings, which was denied by the trial court, noting that ETF would have the right to suspensively appeal from a judgment of adoption if one is granted. ETF filed a second motion to proceed *in forma pauperis*, which was denied as moot because the first motion was granted.

On July 1, 2020, the trial court held a hearing on the adoption in chambers. The written judgment granting the adoption states that the adoption was found to be in the best interest of the children "for reasons orally assigned." That hearing was not recorded or transcribed. The trial court signed an order allowing ETF to appeal the judgment granting the adoption. The trial court also made the notation referenced above on ETF's request to appeal the June 10, 2020 ruling. A notice of intent to apply for writs was denied because an appeal was granted.

On appeal, ETF argues that his due process rights were violated when the trial court failed to appoint counsel for him. ETF also urges that there was no clear and convincing evidence to justify termination of his parental rights and that it was not in the best interest of the children to terminate his parental rights.

## DUE PROCESS AND
## APPOINTMENT OF COUNSEL

ETF is appearing in proper person in this appeal. He asserts that he told the trial court he could not afford a lawyer and he claims that his due process rights were violated because the court did not appoint a lawyer to represent him in these proceedings which resulted in the termination of his

parental rights. ETF stated in his brief, "When I asked [the trial court] about a lawyer because I couldn't afford one she provided me with a paper with phone numbers to legal aid. I tried calling legal aid numerous times to no avail."

For the reasons outlined below, we find that the trial court erred in failing to conduct an inquiry as to whether ETF was entitled to appointed counsel and we are constrained to reverse the trial court judgments.

**Legal Principles**

Intrafamily adoptions are authorized by La. Ch. C. arts. 1170 and 1243, et seq. The persons who may petition for an intrafamily adoption are set forth in La. Ch. C. art. 1243, which provides in pertinent part:

A. A stepparent, . . . may petition to adopt a child if all of the following elements are met:

(1) The petitioner is related to the child by blood, adoption, or affinity through the mother of the child or through a father who is filiated to the child in accordance with the Civil Code.

(2) The petitioner is a single person over the age of eighteen or a married person whose spouse is a joint petitioner.

(3) The petitioner has had legal or physical custody of the child for at least six months prior to filing the petition for adoption[.]

La. Ch. C. art. 1193 states in part:

Unless rights have been terminated in accordance with Title X or XI, consent to the adoption of a child or relinquishment of parental rights shall be required of the following:

. . . .

(2) The father of the child, regardless of the child's actual paternity, if any of the following apply:

(a) The child is a child born of the marriage in accordance with the Louisiana Civil Code or its legal equivalent in another state[.]

7

Regarding the consent of a parent, La. Ch. C. art. 1244 provides in part:

> A. Except as otherwise provided herein, any parent may execute an authentic act consenting to the adoption of his child in an intrafamily adoption, including a waiver of service or notice for any subsequent proceeding.
>
> B. If the parent of a child born of marriage is married to the stepparent petitioner and executes an authentic act of consent, he need not join in the petition nor be served with a copy thereof [.]

Opposition to an intrafamily adoption is governed by La. Ch. C. art. 1244.1:

> A. A parent, whose rights have not been terminated in accordance with Title X or XI or who has not previously consented to the adoption in accordance with Article 1244, may oppose the adoption of his child by filing a clear and written answer and opposition to the adoption. The answer and opposition shall be filed with the court within fifteen days from the time of service of the filing of an intrafamily adoption petition.
>
> B. Upon receipt of the opposition, the court shall appoint an attorney to represent the child, subject to the limitations in Article 1121. Neither the child nor anyone purporting to act on his behalf may be permitted to waive this right. The costs of the representation of the child shall be taxed as costs of court.
>
> C. *When the opposition provides that the parent cannot afford to hire an attorney, the court shall determine whether due process requires the appointment of counsel within twenty-one days of the filing of the opposition.*
>
> D. Notice shall be served in accordance with Articles 1133 and 1134 on the opposing parent, the legal custodian, the petitioner, counsel appointed for the child, counsel appointed for the parent, and the other parent not consenting to the adoption pursuant to Article 1144 or whose rights have not previously been terminated. [Emphasis supplied.]

Regarding instances in which parental consent to an intrafamily adoption is not required, La. Ch. C. art. 1245 provides in pertinent part:

> A. The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B or C of this Article at the hearing on the opposition and petition.

8

. . . .

C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:

(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.

(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.

The failure of a parent to communicate with the child or to provide court-ordered support for the child without just cause represents a failure by the parent to foster the parent-child relationship and allows a stepparent to adopt the child. *See In re Puckett*, 49,046 (La. App. 2 Cir. 4/17/14), 137 So. 3d 1264. An intrafamily adoption terminates parental rights of the biological parent who has failed to contact and/or support the child without just cause. *See* La. Ch. C. art. 1256.

The party petitioning the court for adoption carries the burden of proving that a parent's consent is not required under the law by clear and convincing evidence. Once a prima facie case is proven, the burden of proof shifts to the nonconsenting parent to show that his failure to visit the children or to comply with the child support order was due to factors beyond his control. *In re B.J.C. Applying for Intrafamily Adoption*, 51,110 (La. App. 2 Cir. 9/28/16), 206 So. 3d 337.

Even if the parent's failure was without just cause, the judge nonetheless must determine whether the proposed adoption and consequent severance of the parental relationship are in the best interest of the child.

*Adoption of Latiolais*, 384 So. 2d 377 (La. 1980); *In re K.L.H.*, 1999-1995 (La. App. 3 Cir. 9/20/00), 771 So. 2d 706.

With regard to intrafamily adoptions, La. Ch. C. art. 1244.1 does not grant an absolute right to counsel to an opposing parent in an intrafamily adoption case, but it does provide the mechanism for the trial court to determine if due process requires the appointment of counsel. *See In re T.E.N.*, 15-100 (La. App. 5 Cir. 6/30/15), 171 So. 3d 1219.

Due process requirements and concerns in termination of parental rights have been considered by the United States Supreme Court in *Lassiter v. Department of Soc. Serv. of Durham Cty.*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). In that case, the Supreme Court considered whether the right to appointed counsel existed in state-instituted proceedings to terminate parental rights. The plaintiff mother had been convicted of second-degree murder and was serving a lengthy prison sentence. The State of North Carolina sought to terminate her parental rights because she had failed to communicate with her child or inquire about his well-being after he was taken into state care. The plaintiff was brought to the hearing and the court determined that she was given ample opportunity to obtain counsel and was without just cause for failing to do so. At the hearing, the plaintiff did not argue that she was indigent and the trial court did not appoint counsel for her. After her parental rights were terminated, she appealed, arguing that, because she was indigent, the Due Process Clause of the Fourteenth Amendment entitled her to the assistance of counsel, and the trial court erred in not appointing counsel for her.

Based on its precedents of what fundamental fairness means when considering the right to counsel, the Supreme Court determined that there is

10

a presumption that an indigent has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. *Lassiter, supra.* However, the court considered that, in some cases, due process may require appointment of counsel. The Supreme Court then noted the case of *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), which set forth three elements to be evaluated in deciding what due process requires: the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. These elements must be balanced against each other, and then against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom. *Lassiter, supra.*

In summarizing the *Eldridge* factors in light of the right to counsel when a state seeks to terminate an indigent parent's rights, the Supreme Court in *Lassiter* stated:

> [T]he parent's interest is an extremely important one (and may be supplemented by the dangers of criminal liability inherent in some termination proceedings); the State shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and, in some but not all cases, has a possibly stronger interest in informal procedures; and the complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high.

The Supreme Court ultimately concluded that it would leave the decision of whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review.[3]

_____

[3] Louisiana is among the states that statutorily provide for appointment of counsel in state-instituted termination proceedings. *See* La. Ch. C. art. 1016.

11

Strictly limited to the unique facts presented here, we find that the trial court erred in failing to inquire into whether ETF's due process rights necessitated the appointment of legal counsel. The present matter is similar to the issues presented in *In re B.J.C.*, 49,852 (La. App. 2 Cir. 4/15/15), 163 So. 3d 905. In that case, the trial court granted an intrafamily adoption to a stepfather when the biological father, who was incarcerated, filed a *pro se* opposition to the adoption. The father did not request the appointment of counsel in his opposition. The trial court held a hearing on the adoption and the father was not present in court. The trial court granted the adoption and the father appealed, arguing numerous errors in the trial court proceedings and judgment, including the failure of the trial court to appoint an attorney to represent him. In reversing the adoption and remanding for further proceedings, this court found that the trial court failed to strictly construe La. Ch. C. arts. 1244 and 1245. Regarding La. Ch. C. art. 1244.1, this court stated:

> Article 1244.1(B) requires that an attorney be appointed to represent the children, which the trial court so ordered. But subsection C of the article also provides, if necessary, for the appointment of legal representation of the parent against whom the adoption is brought, i.e., in this case, the biological father. His opposition was made *pro se,* so obviously at the time of filing his opposition, the biological father was unrepresented by legal counsel. Although the biological father's opposition does not explicitly state that he could not afford an attorney, notably, he was incarcerated at the time he responded *pro se.* The record does not indicate that the trial court made any attempt to determine whether the biological father was entitled to the appointment of counsel. It would appear that the fact that the biological father made his opposition *pro se* and he was incarcerated, the trial court had a strong indicator that the biological father was unable to afford an attorney. Considering the seriousness of the matter—termination of the biological father's parental rights—at the very least, an inquiry should have been made as to whether he needed the appointment of

legal counsel. The record does not reflect that the trial court made any such inquiry.

In this case, ETF was served with the original petition and the amended petition and, in each instance, the notice required by La. Ch. C. art. 1247 was given.[4] This was the only instruction given to ETF about requesting the appointment of counsel. That notice states in pertinent part:

---

[4] The notices were not in the appellate record that was lodged with this court. After oral argument, the record was supplemented. The notice required by La. Ch. C. art. 1247 states in part:

A. Except when waived in accordance with the provisions of Title XI or XII, notice of the filing of the petition for intrafamily adoption shall be issued by the clerk and served, together with a copy of the petition, on every parent whose consent to the adoption is required pursuant to Article 1193 and whose parental rights have not been terminated by a court of competent jurisdiction, and shall state:

Notice

Louisiana law provides that under certain circumstances your consent to the adoption of your child may be dispensed with and you can permanently lose your rights as a parent by final decree of adoption. An intrafamily adoption petition has been filed requesting the court to grant an adoption and terminate your parental rights to your child. A copy of the petition is attached to this notice. If you do not file a written answer stating your opposition to the adoption within fifteen days of receiving this notice you will lose the right to object to the adoption. If you choose to file a written answer stating your opposition to the adoption you must file it with the clerk of court at _____. Only if you file an answer stating your opposition to the adoption will you have an opportunity to present your opposition to the adoption. If you file an answer stating your opposition, the court will set a hearing, and you will receive notice of the hearing of your opposition.

If you do not file an answer stating your opposition, and if the court at the adoption hearing finds that the facts set out in the petition are true and that adoption is in the best interests of your child, the court can enter a judgment ending your rights to your child. If the judgment terminates your parental rights, you will no longer have any rights to visit or to have custody of your child or make any decisions affecting your child, and your child will be legally freed to be adopted.

*This is a very serious matter. You should contact an attorney immediately so that he or she can help you determine your rights. You have the right to hire an attorney and to have him or her represent you. If you cannot afford to hire an attorney and you oppose the adoption, your answer stating your opposition **may** request that the court determine if you have the right to have an attorney appointed.* If you have filed an answer stating your opposition, whether or not you decide to hire an attorney, you will have the right to attend the hearing of your case, to call witnesses on your behalf, and to question those witnesses brought against you.

You may call the telephone number on the attached form for information concerning free legal aid. If you have any questions

13

> If you cannot afford to hire an attorney and you oppose the adoption, your answer stating your opposition *may* request that the court determine if you have the right to have an attorney appointed. [Emphasis supplied.]

An examination of the required notice shows that it is long and complicated and the information about requesting the appointment of counsel is located deep in the text. The notice did not state that a party opposing an adoption *must* request the appointment of an attorney in his opposition or forfeit any consideration of appointment of counsel by the trial court.

In the present case, ETF filed a *pro se* opposition to the intrafamily adoption. ETF is obviously unsophisticated in legal matters and, even though he did not request the appointment of counsel in his opposition, he did appear in person at the hearing on May 6, 2020, and placed his indigency at issue. He expressly told the trial court that he could not afford counsel, and indicated that he wanted the assistance of counsel. He stated that he had tried unsuccessfully to contact legal aid services. Even though ETF did not formally assert his indigency prior to the June 2020 hearing, he later filed a motion to proceed *in forma pauperis*, which was granted by the trial court. Therefore, his indigency has been established.

It is important to note that this case occurred during the early days of the COVID-19 pandemic when many businesses were closed or working remotely. This factor may have hampered ETF's ability to contact a legal aid service. At that point, when ETF stated that he could not afford an attorney and indicated his desire for legal assistance in this very important

---

concerning this notice, you may call the telephone number of the clerk's office which is _____[.] [Emphasis supplied.]

14

matter, rather than inquire into whether due process and fundamental fairness required the appointment of counsel for ETF, the trial court simply told ETF that, because he failed to include a request for appointed counsel in his opposition, he was no longer entitled to it.

In spite of the difficulties experienced by courts across the state as a result of the closures precipitated by the COVID-19 pandemic, this intrafamily adoption proceeded quickly. The June 2020 hearing on whether ETF's consent to the adoption was necessary was held only three months after the filing of the original petition, one month after the May hearing where ETF requested counsel, and one month after the petition was amended. The amended petition, which added the issue of nonpayment of child support, was not served on ETF until June 3, 2020. The hearing was held on June 10, 2020, only seven days later. La. Ch. C. art. 1137 gives a parent opposing an adoption 15 days within which to file an opposition. ETF was not given the full time to do so afforded by law.

After hearing the evidence regarding whether ETF's consent to the intrafamily adoption was required, the trial court found that ETF had failed to pay child support and to contact the children for six months or more, but made no determination as to whether those failures were without just cause. The record reflects that ETF was unsure what the procedure in court would be and, at the close of the hearing in June 2020, when the trial court concluded that his consent was not required, ETF exhibited a lack of understanding that his parental rights had been terminated, that he had lost the right to visit either child or have any part in their lives, and that he could not appear at the hearing to determine whether the intrafamily adoption was in the best interest of the children.

ETF's indigency has been established. We make no ruling as to whether ETF is entitled to the appointment of counsel. However, under the specific and unique circumstances of this case, we find that due process and fundamental fairness require that the trial court make the inquiry as to whether counsel should be appointed. This opinion should not be construed to hold that, in all instances, trial courts will be required to inquire into the necessity for counsel or to appoint counsel for every biological parent faced with the loss of parental rights in intrafamily adoptions where that request has not been made in the opposition. In this case, given ETF's clear statement at the first court appearance that he could not afford an attorney, his obvious desire to have legal assistance in this very serious matter, the difficulties involved in proceeding in this matter during a time when many businesses were closed due to the pandemic, and the short time periods involved here, we find that the trial court should have inquired into whether the principles of fundamental fairness required appointment of counsel. The trial court erred in failing to do so. This failure requires that the trial court judgments, which found that ETF's consent was not required and that the adoption was in the best interest of the children, be vacated and the matter remanded to the trial court for further proceedings in accordance with this opinion.[5] Because we vacate the judgments and remand for further proceedings, ETF's arguments on appeal regarding whether DLD presented

---

[5] We make two observations concerning this record. First, ETF stated in court that he does not oppose the adoption of ZTF. ETF may be willing to consent to that adoption under La. Ch. C. art. 1244. Second, the hearing on whether the adoptions were in the best interest of the children was not recorded, even though the trial court stated that the decision was based upon reasons orally assigned. Should the trial court, on remand, reach a hearing on whether the intrafamily adoption is in the best interest of the children, we strongly urge that the proceedings be recorded to facilitate appellate review in the event it becomes necessary.

16

clear and convincing evidence to terminate parental rights and whether the adoption was in the best interest of the children are not considered.

## CONCLUSION

For the reasons stated above, we vacate the judgments finding that ETF's consent was not necessary for this intrafamily adoption and granting the petition for adoption filed by DLD. The matter is remanded to the trial court for further proceedings in accordance with this opinion. All costs in this court are assessed to DLD.

**REVERSED AND REMANDED**.